## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **CONTRACTORS, LABORERS, TEAMSTERS AND ENGINEERS PENSION PLAN; CONTRACTORS, LABORERS, TEAMSTERS AND ENGINEERS HEALTH AND WELFARE PLAN; LABORERS INTERNATIONAL UNION OF NORTH AMERICA, LOCAL NO. 1140; CONTRACTORS-LABORERS APPRENTICESHIP TRAINING FUND; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 571; NEBRASKA OPERATING ENGINEERS APPRENTICESHIP AND TRAINING FUND; RON KAMINSKI, ROD MARSHALL, KIM QUICK, TIM McCORMICK, RON FUCINARO and ROBERT HAYWORTH, TRUSTEES OF THE HEALTH, WELFARE AND PENSION FUNDS,** | **CASE NO. 8:08CV490** |
| | |
| Plaintiffs, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| vs. | |
| **G & G TRENCHING, INC.,** a Nebraska Corporation, | |
| Defendant. | |

This case was tried to the Court without a jury on July 14, 2009. The Plaintiffs, Contractors, Laborers, Teamsters and Engineers Pension Plan, *et al.*, were represented at trial by their attorney M. H. Weinberg.  The Defendant, G & G Trenching, Inc., was represented by its attorney Patrick J. Barrett.  Having considered all the evidence and the arguments of counsel, including the post-trial briefs (Filing Nos. 34 and 35), the Court makes the following findings of fact and conclusions of law.

# FINDINGS OF FACT

1. Plaintiff, CONTRACTORS, LABORERS, TEAMSTERS AND ENGINEERS PENSION PLAN (hereinafter "Pension Plan"), is a trust established by construction labor unions and contractors for the purpose of providing and administering a pension program for construction employees represented by various Unions, including the Plaintiff Unions, and provides death, disability, and retirement benefits. The trust is organized under the provisions of Section 302 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 186(c)(2)-(5).

2. Plaintiff, CONTRACTORS, LABORERS, TEAMSTERS AND ENGINEERS HEALTH AND WELFARE PLAN (hereinafter "Health and Welfare Plan"), is a trust established by construction labor unions and contractors for the purpose of providing and administering a health and welfare program for construction employees represented by various Unions, including Plaintiff Unions, and provides life insurance, hospitalization, and medical benefits. The trust is organized under the provisions of Section 302 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 186(c)(2)-(5).

3. Plaintiff, LABORERS INTERNATIONAL UNION OF NORTH AMERICA ("LIUNA"), LOCAL NO. 1140, is a labor organization representing employees in an industry affecting commerce as defined by the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 152(5), and has acted as collective bargaining agent for employees who perform the work of construction.

4. Plaintiff, CONTRACTORS-LABORERS APPRENTICESHIP TRAINING FUND (hereinafter "training fund" or "Laborers' Training Trust"), is a trust established by construction labor unions and contractors for the purpose of providing and administering a training and apprenticeship program for construction employees represented by LIUNA, LOCAL NO. 1140. The trust is organized under the provisions of Section 302 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 186(c)(2)-(5).

5. Plaintiff, INTERNATIONAL UNION OF OPERATING ENGINEERS ("IUOE"), LOCAL NO. 571, is a labor organization representing employees in an industry affecting commerce as defined by the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 152(5), and has acted as collective bargaining agent for employees who perform the work of construction.

6. Plaintiff, NEBRASKA OPERATING ENGINEERS APPRENTICESHIP AND TRAINING FUND (hereinafter "training fund" or "Engineers' Training Trust") is a trust established by construction labor unions and contractors for the purpose of providing and administering a training and apprenticeship program for construction employees represented by IUOE, LOCAL NO. 571. The trust is organized under the provision of Section 302 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 186(c)(2)-(5).

7. Plaintiff, RON KAMINSKI, is a trustee of the Pension Plan and the Health and Welfare Plan. He is an appointed and confirmed trustee of the plans in accordance with the provisions of the trust indenture.

8.  Plaintiff, ROD MARSHALL, is a trustee of the Pension Plan and the Health and Welfare Plan. He is an appointed and confirmed trustee of the plans in accordance with the provisions of the trust indenture.

9.  Plaintiff, KIM QUICK, is a trustee of the Pension Plan and the Health and Welfare Plan. He is an appointed and confirmed trustee of the plans in accordance with the provisions of the trust indenture.

10. Plaintiff, TIM McCORMICK, is a trustee of the Pension Plan and the Health and Welfare Plan. He is an appointed and confirmed trustee of the plans in accordance with the provisions of the trust indenture.

11. Plaintiff, RON FUCINARO, is a trustee of the Pension Plan and the Health and Welfare Plan. He is an appointed and confirmed trustee of the plans in accordance with the provisions of the trust indenture.

12. Plaintiff, ROBERT HAYWORTH, is a trustee of the Pension Plan and the Health and Welfare Plan. He is an appointed and confirmed trustee of the plans in accordance with the provisions of the trust indenture.

13. The Defendant, G & G TRENCHING, INC., is a Nebraska Corporation duly operating in Nebraska and performing construction work. Defendant is an employer as defined in the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 152(2), and is engaged in commerce and in an industry affecting commerce as such terms are defined in Section 2 of the Labor Management Relations Act, 29 U.S.C. § 152(6)-(7).

14. Defendant entered into two agreements to contribute to the health and welfare, pension, and training funds for employees represented by IUOE, LOCAL NO. 571.

       Specifically, on June 12, 2007, the Defendant entered into an agreement with the Union for the period from June 1, 2006, to May 31, 2008, for contributions to the above-described funds (Ex. 6).  On July 29, 2008, the Defendant entered into an agreement with the Union for contributions to the above-described funds running from June 1, 2008, to May 31, 2010 (Ex. 5).

15. The Defendant is delinquent in its contributions to the Plaintiff trust funds.  The fact of this delinquency is not in dispute, nor is the calculation of the delinquency in dispute, except as noted in the "Issues Presented" below.

16. Richard Adkins performed certain work for the Defendant during times relevant to this action, and was paid by the Defendant as an independent contractor and not as an employee.  Adkins is not a party to this action, and has made no claim against the Plaintiff funds.

## ISSUES PRESENTED

1. Whether an alleged breach by IUOE, Local 571, of the collective bargaining agreement, specifically the "most favored nations" clause, extinguished the Defendant's obligation to pay into the trust funds.

2. Whether Richard Adkins ("Adkins") was an independent contractor or an employee of the Defendant for purposes of the calculation of amounts owed by Defendant to the trust funds.

3. Whether, at the time of trial, there existed any cause of action by Plaintiffs for contributions allegedly owed by the Defendant to the training funds.

4.     Whether the Defendant is liable to the Plaintiffs for certain audit expenses, based on services performed by auditor Gene DeBoer ("DeBoer").

## CONCLUSIONS OF LAW

1.     The Court has jurisdiction in this matter by virtue of Section 301(c) of the Labor Management Relations Act, as amended, 29 U.S.C. § 185(c); the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132(e)(2) and 1145; and the Multi-Employer Pension Plan Amendments Act of 1980, P.L. 96-364.

*Whether Plaintiffs' Alleged Breach of Contract Relieves the Defendant of Liability*

2.     An employer's obligation to pay contributions into a union trust fund, under a properly executed collective bargaining agreement, is not abrogated by the union's alleged violation of that collective bargaining agreement. *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 466 (1960)(holding that "that the union's performance of its promises is not a condition precedent to [the Defendant's] duty to pay royalty" into the trust fund).

3.     Delinquency by member-employers of such trusts must be avoided because when one contributing employer fails to make contributions there is an increased burden on other contributing employers to maintain the planned benefits. *Id.* at 469 (noting that "unlike the usual third-party beneficiary contract, [an ERISA welfare plan] is an industry-wide agreement involving many promisors.").

4.     IUOE, Local No. 571's alleged breach of the collective bargaining agreements' "most favored nations" clause is not material to the instant action because, even if

6

IUOE, Local No. 571 did breach that clause, such breach did not extinguish the Defendant's obligation to contribute to the trust funds.

*Whether Richard Adkins Was an Employee or Independent Contractor*

5. The United States Supreme Court has determined that "the ultimate conclusion as to whether an individual is an employee or an independent contractor is a question of law[, and consequently,] a common-law test should be applied to determine who qualifies as an employee under ERISA." *Berger Transfer & Storage v. Central States, Se. and Sw. Pension Fund*, 85 F.3d 1374, 1377-78 (8th Cir. 1996) (citing *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323-24 (1992)).[1]

6. The Plaintiffs have not met their burden of demonstrating that "the [Defendant's] right to control the manner and means by which" Adkins performed his work was sufficient to constitute an employer/employee relationship. *Berger*, 85 F.3d at 1378.

7. Because the Plaintiffs have not met their burden of demonstrating that Adkins was an employee of the Defendant and not an independent contractor, the Court

---

[1] In *Nationwide,* the Supreme Court instructed that:

[i]n determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Nationwide*, 503 U.S. at 323-24.

concludes, for purposes of this litigation only, that Adkins was an independent contractor and that the Defendant owes no contributions to the trust funds related to Adkins's work.

*Whether the Final Pretrial Order Preserved Claims of the Training Funds*

8. "[C]ounsel must jointly prepare and present to the judge at the pretrial conference a proposed 'Order on Final Pretrial Conference' that includes . . . [a] list [of] all remaining legal issues to be determined, setting out in detail each element of the genuinely controverted unresolved claim or defense . . . ." NECivR16.2(a)(2). "[The pretrial] order controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16 (d). "The court may modify the order issued after a final pretrial conference only to prevent manifest injustice." Fed. R. Civ. P. 16 (e).

9. A pretrial order supersedes all previous pleadings. *Hartman v. Workman*, 476 F.3d 633, 635 n.3 (8th Cir. 2007) ("The issues identified in the Pretrial Order supersede any issues raised in the Complaint [or] Amended Complaint"). Consequently, a claim raised in the Plaintiff's Complaint will be deemed waived if it is "not includ[ed] . . . in the Pretrial Order." *Id.*

10. In general, a pretrial order is to be "construed liberally to cover any theory of recovery that might be embraced within the order's language." *In re Papio Keno Club, Inc.*, 262 F.3d 725, 729 (8th Cir. 2001) (citing *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 818 (10th Cir. 1979). But, a pretrial order "measures the dimensions of a lawsuit," and therefore, once entered, it should only be modified "to prevent manifest injustice." *United States v. $84,615 in U.S. Currency*, 379 F.3d 496, 499

(8th Cir. 2004) (citations and internal quotations omitted). Orders entered following Rule 16 conferences are not lightly disturbed." *Id.* (citing *Alberty-Velez v. Corporacion De Puerto Rico Para La Difusion Publica*, 242 F.3d 418, 423 (1st Cir. 2001) .

11. The Plaintiffs and Defendant included in the final pretrial order the controverted and unresolved issue: "[w]hether, under applicable law, the Plaintiffs are entitled to contributions for pension and health and welfare contributions." (Filing No. 22, p. 4.) The parties, therefore, made explicit reference to two of the three distinct types of funds claiming contributions from the Defendant. The final pretrial order also included the controverted and unresolved issue: "[w]hether the Plaintiffs have stated a cause of action upon which relief can be granted." (Filing No. 22, p. 4.)

12. The Court will not consider the issue of whether the Defendant owed contributions to separate and distinct training funds, because that issue was not included in the Pretrial order. Neither will the Court interpret the "controverted and unresolved issue" of whether the Plaintiffs stated a cause of action – an affirmative defense generally raised by defendants – as cross-referencing and incorporating all causes of action in the Complaint. Such an interpretation of the pretrial order would exceed "liberal construction" and would expand the dimensions of the lawsuit as defined in the final pretrial order.

13. Consequently, the Defendant does not owe any amounts to the Plaintiff training funds.

*Whether Plaintiffs Are Entitled to Audit Expenses for Gene DeBoer*

14. Any issues related to the Plaintiffs' expenses for retention of auditor Gene DeBoer are moot, because the record indicates that DeBoer performed audits of the training funds only (Filing No. 22, Ex. 18), and this Court has determined that the Plaintiffs' claims related to the training funds are precluded. *(See* Findings of Law Nos. 8-13.)

ACCORDINGLY,

IT IS SO ORDERED:

1. The Defendant, G&G Trenching, Inc., a Nebraska Corporation, is ordered to pay the Plaintiffs (Plaintiffs Contractors, Laborers, Teamsters and Engineers Pension Plan; Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan; Laborers International Union of North America, Local No. 1140; International Union Of Operating Engineers, Local 571; Ron Kaminski, Rod Marshall, Kim Quick, Tim McCormick, Ron Fucinaro and Robert Hayworth, Trustees of the Health, Welfare and Pension Funds) damages in the amount of $52,006.93.[2]

---

[2] The net damages Defendant owed to the Plaintiffs as of July 6, 2009, was $52,006.93. (*See* Filing No. 22, Ex. 17A.) This sum is the total owed to the Pension Plan and the Health and Welfare Plan. Specifically, it represents the total unpaid liquidated damages and interest on received contributions as of July 6, 2009 ($11,007.19), and the total of currently-owed contributions and liquidated damages and interest on such contributions as of July 6, 2009 ($40,999.74), without considering any amounts related to the work of Richard Adkins.

2. The claims of the Plaintiffs Contractors-Laborers Apprenticeship Training Fund and Nebraska Operating Engineers Apprenticeship and Training Fund are dismissed, with prejudice;

3. The Plaintiffs prevailing in this action are entitled to reasonable attorney's fees and costs.[3]   Plaintiffs may submit their application for attorneys fees and costs within the time permitted under Fed. R. Civ. P. 54(d); and

4. A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 10th day of August, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

[3] *See* 29 U.S.C. §§ 1132(g)(2).